Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John A. Nordberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 12 C 1031 | **DATE** | 10/23/2012 |
| **CASE TITLE** | R.L., by and through his parent Bernadine Long, vs. Michelle R.B. Saddler *et al.* | | |

**DOCKET ENTRY TEXT**

The Public Guardian's motion to intervene [9] is granted. The defendants' and the Public Guardian's motions to dismiss for lack of jurisdiction [13] are granted. The defendants' motion to cite additional authority [27] is denied as moot. No appearance is necessary on Wednesday October 24th.

■[ For further details see text below.]  Docketing to mail notices.

## STATEMENT

The named plaintiff in this case is R.L., a 16-year-old boy who suffers from serious psychiatric illnesses, including bipolar disorder and schizophrenia, which have led to five hospitalizations. Since he was three, R.L. has been in and out of the Illinois child welfare system and has changed residences numerous times.

Although R.L. is the named plaintiff, the case was filed on his behalf by Bernadine Long. She became a foster mother to R.L. in 2000 and adopted him in 2007, but she lost custody in 2010 after several rulings by the Illinois Juvenile Court. R.L. is now in the custody of the Illinois Department of Children and Family Services ("DCFS") and lives in a specialized foster home. The goal, as articulated by the Juvenile Court, is for R.L. to eventually return home to Bernadine.

The complaint focuses on the loss of custody in 2010. Bernadine alleges that the State of Illinois forced her to make a difficult and unfair choice. R.L. was hospitalized at the time because of "a violent outburst towards himself and family members." (Cmplt. ¶ 25.) The hospital was only a short-term facility. Bernadine believed he needed to be placed in a long-term psychiatric residential treatment facility ("PRTF"). (¶¶ 5, 26.) But she could not pay for this care. According to Bernadine, R.L. was eligible for PRTF services through Medicaid but Illinois apparently does not have a licensed PRTF for Medicaid eligible children who are not also diagnosed with substance abuse. Bernadine was allegedly told by DCFS officials that Illinois would not pay for PRTF services unless Bernadine gave custody to DCFS. (¶ 26.) Faced with this choice, Bernadine left R.L. at the hospital where he was receiving treatment. (¶ 27.) As a result, a petition was then filed in the Illinois Juvenile Court seeking to have R.L. declared a "dependent" as defined in 705 ILCS 405/2-4(1)(a). (¶ 29.) The Juvenile Court found that R.L. was not receiving proper medical care "through no fault[,] neglect or lack of concern by his parent" and gave DCFS custody of R.L. (¶ 30.) DCFS was "thereby authorized to make decisions regarding R.L.'s emergency medical treatment, ordinary and routine medical care, and any major medical care recommended by a physician." (*Id.*.)

Bernadine now asserts that the failure of Illinois to provide PRTF services as required by Medicaid has allegedly "cost Bernadine her parental rights." (¶ 33.) Bernadine also complains that the 2010 state court

rulings led to other adverse consequences for her.  Because she was in the DCFS system, she had to comply with various requirements, including "quarterly DCFS meetings; monthly DCFS home inspections; semi-annual DCFS Administrative Case Reviews; and semi-annual court appearances." (¶ 31.)  The complaint contains two claims, both pursuant to 42 U.S.C. § 1983 and both alleging that Illinois failed to provide PRTF services as required by Medicaid, 42 U.S.C. §§ 1396 *et seq.*

Although the complaint focuses mostly on the loss of custody in 2010, it does not actually seek damages directly relating to this decision. Nor is Bernadine seeking to recover damages on her own behalf, despite her allegations suggesting as much. Instead, R.L. is the only plaintiff.  Bernadine's role in this lawsuit is only as an advocate on R.L.'s behalf based on her role as a non-custodial parent. The complaint only seeks future PRTF services. If we understand the complaint correctly, Bernadine is seeking an injunction ordering Illinois to provide PRTF Medicaid services if the Illinois Juvenile Court rules that custody of R.L. should be returned to Bernadine and if thereafter problems again arise upon his return home and if Bernadine then decides R.L. should be moved to a long-term psychiatric facility.  This lawsuit is essentially an attempt to get the funding ready to prepare for this possibility down the road.

After reading the complaint, a few initial questions arise. First, given the assertion that the key event was Bernadine's loss of custody in early 2010, then why did she wait until 2012 to file this lawsuit? Second, and relatedly, what happened in the Juvenile Court between 2010 when the Illinois Juvenile Court made its rulings and 2012 when the complaint was filed?  Bernadine's complaint and supporting affidavit do not touch upon these questions. For example, in the chronology of events set forth in Bernadine's affidavit, paragraph 11 states that Bernadine lost custody in March 2010. The very next paragraph (¶ 12) then jumps all the way to May 23, 2012 when the Juvenile Court entered a permanency order. This relatively large gap in the time sequence – from March 2010 to May 2012 – naturally raises questions about what happened in the interim.

The defendants in this case are the directors of two Illinois agencies charged with administering Illinois Medicaid services (hereinafter, the "Illinois defendants"). They filed a motion to dismiss. Although they raise several arguments, the primary one is that Bernadine lacks Article III standing because (i) she is not asserting any direct claims on her own behalf and (ii) she no longer has custody of R.L. and therefore cannot bring claims on his behalf. The parties have briefed this motion.

Also before the Court is a motion to intervene, pursuant to Fed. R. Civ. Pro. 24(a)(2) & (b), filed by the Cook County Public Guardian, which was appointed by the Illinois Juvenile Court in 2010 as R.L.'s attorney and guardian *ad litem*.  (The Juvenile Court also appointed D. Jean Ortega-Piron as the DCFS Guardianship Administrator for R.L., but Ms. Ortega-Piron for whatever reason has not chosen to intervene or otherwise pursue these claims on R.L.'s behalf.) The Guardian seeks to intervene to inform this Court about R.L.'s wishes.  As recounted in the brief, an assistant public guardian interviewed R.L. about this lawsuit. R.L. stated that "although he wished to return home to his mother in 5 months, he did not wish to go to residential treatment upon his return home." (Doc. #10 at 3-4.)  He was clear about this point. (*Id.*)  He also stated that he "does not remember ever speaking to the attorney who filed this lawsuit" and that he believes this lawsuit was "not a good idea" and wants it "to go away." (*Id.*)  The Guardian also notes in its brief that the same general issues being litigated in this federal lawsuit – *i.e.* "services and placement for R.L." – are issues also "currently being litigated in R.L.'s child protection case." (*Id.* at 5.)

The Court agrees with the arguments for allowing the Guardian to intervene.  As further detailed in its opening brief (at pp. 4-7), the Guardian has met the four factors for intervention:  (1) timeliness; (2) an interest in the subject matter; (3) potential impairment of the movant's interest; and (4) lack of adequate representation of this interest. In particular, the information regarding R.L.'s wishes is relevant and helpful to this Court's decision. The Guardian has also filed a motion to motion to dismiss under Rule 12(b)(1), raising arguments similar to those raised by the Illinois defendants.  By allowing the Guardian to intervene, this motion is now before the Court.

As for the question whether Bernadine has standing under Article III, which is the central argument raised in both motions to dismiss, the argument is short and simple. Based on orders by the state court in

| STATEMENT |
|---|

2010, Bernadine no longer has custody of R.L. As Bernadine acknowledges in her complaint, DCFS now has the "final say on when, where, and what medical care and treatment R.L. receives." (Cmplt. ¶ 31; *see also* ¶ 30.) The DCFS guardian, Ms. Ortega-Piron, has not chosen to file or otherwise join in this lawsuit. Moreover, as the Public Guardian has noted, R.L. opposes the filing of this lawsuit and also opposes any attempt to put him in a PRTF if he is returned to Bernadine's home.

In her response brief, Bernadine raises two major arguments. First, she agues that, although she did lose custody of R.L., she still has residual parental rights under Illinois law as a non-custodial parent and therefore may bring the suit in this role. *See* Pl. Resp. at 7. We are not persuaded by this argument because – as Bernadine acknowledges in her brief – the right of the noncustodial parent to maintain a lawsuit on behalf of the minor child exists only when "there is no conflict of interest." *Id*. at 7. As described above, a conflict exists in this case based on the rulings by the Juvenile Court and based on the Guardian's interview with R.L., who has stated that he did not want this lawsuit filed on his behalf and does not want to live in a PRTF. As the Guardian states, "[i]f this lawsuit is successful, R.L. may be placed in residential care, despite his wishes to the contrary." (Doc. # 25 at 3.) There is in short a conflict over whether PRTF treatment is appropriate at this time.

The second argument – and really the crux of the complaint – is that Bernadine's loss of custody and her resulting loss of authority to make medical decisions on R.L.'s behalf only occurred because of the failure of Illinois to live up its Medicaid obligations to provide PRTF services, thus forcing Bernadine into a painful choice, one she describes as "the shameful 'custody for care' paradox in Illinois." (Pl. Resp. at 5.)

The difficulty with this second argument is that it requires us to both intrude upon ongoing state court litigation and also to go back and effectively overrule decisions already made by the state court. In *T.W. v. Brophy*, 124 F.3d 893 (7th Cir. 1997), the Seventh Circuit addressed a similar issue of whether a party had standing to represent minor children in a federal lawsuit dealing with issues already litigated in a custody battle in Wisconsin state court. *Id.* at 895. The Seventh Circuit began its analysis by noting generally that issues of domestic relations and child custody are the "primary responsibility of the states rather than of the federal government" and that lower federal courts should "go easy in interfering with the states' exercise of that responsibility." *Id.* at 896, 897. When a potential conflict exists about who is the proper party to represent the child, the Seventh Circuit stated that the best resolution would be to have the state court make this determination "in order to head off a situation in which, by virtue of the federal court's exercise of an independent jurisdiction, the children are represented by two antagonistic adults, one in the state courts and one in the federal courts." *Id.* at 898. However, the Seventh Circuit concluded that it did not need to resolve this question because there was an independent ground why federal jurisdiction was lacking – namely, "the *Rooker-Feldman* doctrine, which confines jurisdiction to review judgments of state courts to the U.S. Supreme Court." *Id*. at 898. This doctrine precludes federal district courts from acting as *de facto* appellate courts to the state court.

We find this analysis fits this case. Here, the Illinois Juvenile Court in 2010 issued several orders giving custody to DCFS. Bernadine was represented by counsel in those hearings. The Illinois defendants asserted in their opening brief that Bernadine had an "adequate opportunity to litigate the federal civil rights claims pressed here in the state juvenile court, if needed." (Doc. # 14 at 11.) In her response brief, Bernadine did not attempt to rebut or question this assertion and thus implicitly conceded that she could have raised her present claims in the Juvenile Court. If we were to allow Bernadine's current claims to proceed in this Court, we would be placed in a role of having to second-guess the state court custody rulings in 2010. This would violate *Rooker-Feldman* just as it did in the *T.W.* case.

It is not just the concern about re-litigating the 2010 custody decision, but also the larger problem of this Court being put in the role of intruding into an ongoing proceeding with only limited knowledge of what has taken place. We have only been given a partial snapshot of what has and is taking place in state court. This leads us back to the problem of the chronological gap. Both Bernadine's complaint and affidavit skip over the year 2011.

## STATEMENT

Yet we subsequently learned from the Public Guardian's brief that significant events took place in 2011, which seem to undermine or at least complicate the factual premises of the complaint. In June 2011, the Juvenile Court returned R.L. to Bernadine under "a Section 2-24 order of protective supervision, finding Bernadine able to care for him." (Docket # 10 at 2.) In other words, despite the loss of custody in 2010, Bernadine effectively regained custody in 2011. A few months later, however, R.L. and Bernadine had a physical altercation and the police were called, and R.L. was again hospitalized. (*Id.*) On September 27, 2011, the Juvenile Court held a hearing about the new developments and found that Bernadine was unable to care for R.L., thus returning guardianship to Ms. Ortega-Piron as DCFS Guardian Administrator. (*Id.*) DCFS thereafter decided to place R.L. in specialized foster care, not in a residential treatment center. (*Id.* at 4.) The Guardian's brief also states that Bernadine has filed an appeal of the Juvenile Court's September 27, 2011 ruling and that the appeal is pending.

As it turns out, a ruling was recently issued. *In re Rico L. v. Bernadine L.*, __ N.E.2d __, 2012 WL 4054845 (Ill. App. Ct. Sept. 14, 2012). The Appellate Court rejected Bernadine's arguments on appeal and affirmed the trial court's ruling returning custody to the DCFS. The decision is 55 pages, and it includes a dissenting opinion. The parties here did not inform this Court about the issuance of this opinion.

The Appellate Court's ruling underscores our conclusion that Bernadine does not have standing and that this lawsuit is barred by *Rooker-Feldman*. The opinion makes clear that the facts relevant to R.L.'s treatment and custody are not simple and involve many interrelated events and decisions spanning over a broad timespan. The fact section of the opinion is 20 pages, and it describes in detail many ongoing issues that have arisen over the years, such as (to cite one example) a dispute about whether R.L. should go to a therapeutic high school. *Id.* at *6. The Appellate Court emphasized that its decision was based on a review of the "entire record of the juvenile proceedings" including the "behavioral problems that resulted in four separate hospitalizations since June 2008." *Id.* at *15. In addition, a key part of the Appellate Court's decision is the fact that the Juvenile Court found that Bernadine failed to call DCFS within 24 hours after R.L. was hospitalized in August 2011, a failure that violated the conditions of protective custody. *Id.* at *15. This point is mentioned several times in the decision. *Id.*; s*ee also* at *17 ("The record makes it indisputable that Bernadine did not call DCFS within 24 hours of [R.L.'s] hospitalization."). This finding undermines Bernadine's assertion in this Court that the loss of custody related *solely* to the lack of Medicaid funding in 2010.

Perhaps the most important piece of information we gleaned from the recently-issued decision is the fact that Bernadine raised as one of her main arguments to the Illinois Appellate Court the same basic "custody for care" argument she is now raising in this lawsuit. Here is the first paragraph of the analysis section of the opinion, which summarizes the "overarching contention" in her brief:

> Bernadine submits in an overarching contention that "at the heart of this case is a pervasive misunderstanding, made by many actors in the child welfare system and the legal system, about proper care and treatment of a child who has intensive psychiatric needs." Bernadine argues that the circuit court applied a "forced custody relinquishment policy" to [R.L.]. According to Bernadine, the circuit court "mistakenly assumed [the policy] to be reasonable and 'best' for children with severe mental health needs." The policy "require[s] their parents to forfeit legal custody and guardianship of their children to enable children to access treatment and protect them from harming themselves and their family members."

*Id.* at *12. The opinion also states that an *amicus curiae* brief was submitted on Bernadine's behalf by the Edwin F. Mandel Legal Aid Clinic at the University of Chicago Law School. *Id.* at *13. The amicus brief also raised the custody-for-care argument, asserting that "no reason [exists that] a fit, willing, and able parent should lose custody so that her child can receive necessary mental health services." *Id.* Although the opinion does not indicate whether these arguments were specifically tied to the Medicaid statute, it does make clear

| STATEMENT |
|---|
| that Bernadine has been vigorously arguing the larger point about "custody for care" through the state court system. This would mean that any decisions entered here would either duplicate or call into question rulings already made there. The *Rooker-Feldman* doctrine (as well as the collateral estoppel doctrine) are designed to prevent re-litigation by a federal district court of a state court ruling. *Rooker-Feldman* counsels that Bernadine should continue pursuing her claims through the state court system. Given this fact, we should make clear that we do not express in this ruling any opinion on the merits of the "custody for care" argument. In the decision by the Appellate Court, there was a dissenting opinion, and Bernadine may be successful in an appeal to the Illinois Supreme Court. For all the above reasons and for the reasons more fully set forth in the briefs of the Illinois defendants and the Public Guardian, we dismiss the complaint for lack of jurisdiction.<br><br>**Addendum:** Just as we were finishing this ruling, we received a motion from the Illinois defendants seeking to cite additional authority consisting of the Illinois Appellate Court's opinion *In re Rico L* We appreciate this submission by the Illinois defendants. However, because we already located the Appellate Court's decision on our own and have discussed it above, we deny the motion as moot. |